JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ZWEIBELSON, John

**(b)** County of Residence of First Listed Plaintiff: Hartford
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Norman A. Pattis; 383 Orange Street, New Haven, CT 06511; 203-393-3017

### DEFENDANTS
City of Hartford, Jason Thody, Rafael Medina, Dustin Rendock

County of Residence of First Listed Defendant: 
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) [ ] 863 DIWC/DIWW (405(g)) [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other [ ] 550 Civil Rights [ ] 555 Prison Condition [ ] 560 Civil Detainee - Conditions of Confinement | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C Section 1983
Brief description of cause:
Retaliation; Harassment

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 12/7/2020
SIGNATURE OF ATTORNEY OF RECORD: /s/Norman A. Pattis/s/

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN ZWEIBELSON, | : |
| Plaintiff, | : DKT No.: 20 -1812 |
| v. | : |
| CITY OF HARTFORD; JASON THODY; RAFAEL MEDINA; DUSTIN RENDOCK; | : |
| Defendants. | : DECEMBER 7, 2020 |

### COMPLAINT

*"There is no more dangerous menace to civilization that a government of incompetent, corrupt, or vile men."* – Ludwig von Mises.

1. This is an action to protect a faithful public servant who daily risks his life to keep the people of Hartford safe and supervises others who daily risks their lives for the same purpose from the consequences that corruption, incompetence, and favoritism will surely yield. This action seeks monetary damages for retaliation in violation of the First Amendment and Article the First, § 4 of the Connecticut Constitution and for a hostile work environment. During the time period that gave rise to this complaint, the Defendants have continuously treated the Plaintiff hostilely and retaliatorily by failing to protect the Plaintiff from a coworker who was harassing him or to discipline that coworker for clear policy violations after he reported the harassment, opening a manufactured internal affairs investigation into the Plaintiff without notifying him, ostracizing him within the Hartford Police Department in such a manner as to hinder his ability to look after the safety of his subordinates, and denying him a raise in pay that he was entitled to for earning college credits.

1

## PARTIES

2. The Plaintiff, John Zweibelson, is an adult resident of the State of Connecticut and a Sergeant with the City of Hartford's Police Department.

3. The Defendant, the City of Hartford, is a Connecticut municipality incorporated in and under the laws of Connecticut, and it employs more than one hundred people.

4. Chief Jason Thody is the chief of the Hartford Police Department. He is sued in his official capacity only.

5. Assistant Chief Rafael Medina is an assistant chief of the Hartford Police Department. He is sued in both his official capacity and his personal capacity.

6. Deputy Chief Dustin Rendock is a deputy chief of the Hartford Police Department. He is sued in his official capacity only.

## JURISDICTION

7. Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1367 and 42 U.S.C. § 1983. Venue is appropriate pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### *A Dedicated Public Servant*

8. The Plaintiff, John Zweibelson, has been, and still is, employed by the City of Hartford in its police department since 2003.

9. Since 2017, Mr. Zweibelson has risen through the ranks of the Hartford Police Department and is currently a sergeant who is a patrol shift supervisor.

10. Sgt. Zweibelson has never been disciplined while serving as a Hartford police sergeant.

2

11. He has also taken steps to improve his value to the department by attending Eastern Gateway Community College's online criminal justice program where he has been an outstanding student.

### *Mr. Zweibelson Is Harassed & Reports It.*

12. On October 22, 2019, Sgt. Zweibelson worked as supervisor for what was known as the Hartford Police Department's Patrol Division B Squad North Patrol. During that shift, his assigned unit number was 210, which also served as his radio call sign.

13. At approximately 6:20 PM, Sgt. Zweibelson, in an effort to remain alert to the environment in the City of Hartford, was monitoring his work radio and an I-phone application entitled "5-0 Radio" that allows a user to listen to multiple additional Hartford Police Department radio channels and calls.

14. While he was listening to the communications, Sgt. Zweibelson heard himself referred to by his unit number, 210, in a conversation between one of his subordinates, Domenick Agostino ("Unit 265"), and a Hartford Police Dispatcher, who was later identified as Adele Muraski.

15. The conversation between Officer Agostino and Ms. Muraski did not treat Sgt. Zweibelson favorably. Instead, Officer Agostino complained on the official department radio frequency that Sgt. Zweibelson was "a tool" and referred to him as a "total absolute toolbox." He then alleged that Sgt. Zweibelson failed to respond to some of the dispatcher's attempts to contact him. Officer Agostino then tried to bribe the

dispatcher with coffee for a month if she would "fleet" Sgt. Zweibelson, or, in other words, broadcast his alleged unresponsiveness across all department radio frequencies to embarrass him and possibly get him trouble with his supervisors.

16. While "fleeting" is a standard procedure to reach an unresponsive officer, it is reserved for developing situations of great urgency or to gain the attention of a unit who has not responded to multiple calls.

17. Ms. Muraski did not accept the bribe, but she agreed with Officer Agostino that Sgt. Zweibelson "really is the worst." Both Officer Agostino and Ms. Muraski continued to denigrate Sgt. Zweibelson for the duration of the call.

18. After hearing the call, Sgt. Zweibelson immediately contacted the Hartford Police Dispatch Center to report what he considered radio misconduct and a violation of the City of Hartford Harassment Policy. He further reported the incident to his squad commander, Lt. Sean Michel, on October 23, 2019.

19. In addition, Sgt. Zweibelson experienced severe fear for his safety as the dispatcher was responsible for sending him to respond to calls, including calls that Officer Agostino would also respond to. In other words, Sgt. Zweibelson no longer trusted either of them to work with him safely – a non-dispensable component of a police unit.

20. Sgt. Zweibelson expressed his fear and his concerns to his superiors, and he filed an official complaint with Lieutenant Sean Michel and Captain Gabriel Laureano. During a meeting with both Captain Laureano and Lieutenant Michel, they listened to the dispatch tape and agreed that discipline should be imposed on Officer Agostino.

21. Furthermore, Sgt. Zweibelson took several days off in the immediate aftermath to seek medical attention for the anxiety and stress caused by the incident as well as an underlying medical condition that had been exacerbated by it.

### *The Defendants' Complete Lack Of A Response.*

22. Despite Sgt. Zweibelson expressing a legitimate concern and distrust of both Officer Agostino and Ms. Muraski, the Defendants made no efforts to separate them even after Captain Laureano and Lieutenant Michel spoke to Assistant Chief Rafael Medina about their conclusions.

23. Instead, Sgt. Zweibelson was forced to contact the Defendants' Human Resources Department to ascertain if they would even investigate his complaint regarding Officer Agostino's and Ms. Muraski's misconduct.

24. After Sgt. Zweibelson contacted it, the Defendants' Human Resources Department informed Sgt. Zweibelson that it would be outsourcing an investigation of Officer Agostino and Ms. Muraski's conduct to Attorney Russell Jaram of Jackson & Lewis, which also defends the Defendants in employment cases. The Defendants, however, took no steps to separate Sgt. Zweibelson from Officer Agostino and Ms. Muraski.

25. To this day, Ms. Muraski continued to dispatch Sgt. Zweibelson to calls, and she would regularly enter the restricted area of the police headquarters.

26. Officer Agostino also exhibited similar behavior and took it a step further by whistling in a cat-calling manner whenever Sgt. Zweibelson would walk past him. He would also defy Sgt. Zweibelson's orders to wear personal protective equipment.

27. Due to these incidents and fear of a physical confrontation with Officer Agostino, Sgt. Zweibelson was forced to take steps to minimize his contact with both Officer Agostino and Ms. Muraski. For example, when he supervised the booking department, he and a sympathetic supervisor, Lt. Sean Michel, devised a plan to prevent any contact between him and Officer Agostino on their own initiative. The Defendants, however, made no efforts to assist in that regard.

### *The Defendants' Delay & The Results of Their Investigation.*

28. More than six months after Sgt. Zweibelson submitted his complaint against Officer Agostino and Ms. Muraski, the Defendants informed Sgt. Zweibelson that his complaints of hostile work environment, stressful work environment, harassment, and retaliation on the basis of religion and veteran status could not be substantiated.

29. Notwithstanding these conclusions, the Defendants vaguely acknowledged that violations of the Hartford Police Department's Code of Conduct had occurred.

30. The Defendants' conclusions relied on the report of Attorney Russell Jaram dated May 8, 2020.

31. Attorney Jaram's report reads like a self-serving defense brief rather than an investigative report, repeatedly dropping snide remarks as to Sgt. Zweibelson's credibility when he stated that he could not remember or did not know certain things.

32. Attorney Jaram's report, however, could not escape the fact that both Officer Agostino violated the Hartford Police Department's Code of Conduct. It was brazenly silent as to Ms. Muraski's conduct.

33. Thus, on May 14, 2020, the Defendants' Human Resources Department also informed Sgt. Zweibelson that it would be turning the matter over to the Hartford Police Department for further investigation and disciplinary action if necessary.

### *The Hartford Police Department Turns On Sgt. Zweibelson.*

34. After the Defendants' Human Resources Department turned the Code of Conduct violations matter over to the Hartford Police Department's Internal Affairs Division for investigation and action, the Defendants did nothing for more than two months.

35. During those two months, Officer Agostino defied Sgt. Zweibelson's authority and harassed him on several occasions, repeatedly whistling in a cat-calling manner at him whenever he walked by and making derogatory comments to him. In July 2020, Officer Agostino refused to wear a protective mask or give Sgt. Zweibelson a reason for not wearing despite the Defendants requiring one as part of their policies and Sgt. Zweibelson reminding him to wear one.

36. On July 14, 2020, Officer Agostino subsequently became combative with another sergeant, Giovanni DiCenso, who spoke to him about not wearing a mask at a roll call that Defendant Medina attended. Sgt. DiCenso described Officer Agostino's behavior as insubordination.

37. On July 16, 2020, Defendant Medina notified Sgt. Zweibelson through a Captain Coates that Defendant Thody had initiated an internal affairs investigation into complaints of a hostile work environment between Sgt. Zweibelson and Officer Agostino. He ordered Sgt. Zweibelson not to have any contact with Officer Agostino or supervise him. His order further stated that, if official business necessitated that Sgt. Zweibelson

7

and Officer Agostino were in the same area, they should make arrangements to avoid contact.

38.     Sgt. Zweibelson studiously complied with this order. His only regular time of proximity to Officer Agostino were roll calls, and he avoided any contact with him at roll calls.

39.     On August 5, 2020, matters came to a head. Sgt. Zweibelson attended roll call for the South Patrol in his capacity as Southwest Supervisor. Defendant Medina attended and had to ask Officer Agostino to put on his mask.

40.     After the roll call, an informal command meeting of sorts took place between Defendant Medina, Lt. Labelle-Boucher, Sgt. DiCenso, and Sgt. Zweibelson. At that meeting, Defendant Medina demanded an explanation for why officers were not wearing their masks, and Lt. Labelle-Boucher told him that Officer Agostino was claiming a medical exemption to wearing a mask.

41.     Without addressing Officer Agostino's matter any further, Defendant Medina ordered Sgt. Zweibelson not to attend any more roll calls where Officer Agostino was in attendance. Defendant Medina provided no explanation for why he issued such an order despite Captain Laureano and Lieutenant Michel protesting the order to him and pointing out the importance of Sgt. Zweibelson attending roll calls. Defendant Medinia reacted very hostilely to their protestations, and they were forced to enforce his order because he outranked them.

42.     Defendant Medina's order defies logic. Sgt. Zweibelson is a shift supervisor with significant command responsibilities. Officer Agostino is a regular patrol officer with no command responsibilities. Roll calls serve as the only time during a shift where the

8

shift commanders have all of their men in one place for equipment inspection, briefing, and group discussion.

43. As a shift supervisor, Sgt. Zweibelson is responsible for inspecting his officers' equipment to ensure that it is in good working order for their safety. He is also responsible for briefing them on important details such as threats and potential problems that might arise during their shifts. Finally, he is responsible for addressing any problems and concerns that they might have.

44. Because most of Sgt. Zweibelson's subordinates have less than a year of experience and he is responsible for ten to twenty officers at any given time, his attendance at roll calls would be of paramount importance if the Defendants acted logically.

45. To keep up appearances, the Defendants assigned Officer Agostino to another shift to remove him from Sgt. Zweibelson's supervision. They, however, have allowed, and perhaps even encouraged, his overtime to be consistently scheduled so that it overlaps with the roll calls that Sgt. Zweibelson must attend so that Sgt. Zweibelson cannot attend those roll calls despite Officer Agostino not being assigned to Sgt. Zweibelson's shift.

46. Sgt. Zweibelson has consistently protested this treatment to his command staff as well as to the Defendants' Human Resources Department. They have all failed to act to remedy the situation despite having the authority to do so.

47. Furthermore, the Defendants have maintained an open Internal Affairs investigation into Sgt. Zweibelson while consistently refusing to tell him what he has been accused of or to speedily resolve the matter.

48.     An open Internal Affairs investigation is a career-paralyzer because it comprises a police officer's eligibility to be promoted and serves as a death knell to an officer seeking employment with another police department.

49.     Not content with simply harassing him with internal affairs investigations and ostracization, Defendant Rendock then proceeded to deny Sgt. Zweibelson a 2.5% pay increase in October 2020 that he was entitled to by deliberately miscalculating the number of college credits that Sgt. Zweibelson had earned despite clear evidence to the contrary. When Sgt. Zweibelson protested the calculation, Defendant Rendock then invented a requirement that Sgt. Zweibelson needed to supply an official transcript instead of the informal transcript that Captain Gabriel Laureano told him was required and which, upon information and belief, Captain Laureano heard from Defendant Rendock himself.

### *The Defendants Treat Officer Agostino Very Differently.*

50.     Upon information and belief, Officer Agostino has had a troubled career as a police officer. A warrant for his arrest for physically tampering with evidence was prepared and presented to the Hartford State's Attorney's officer in April 2015. Upon information and belief, the Defendants took steps to protect Officer Agostino from a just prosecution during that investigation.

51.     On August 19, 2020, Officer Agostino breached the Hartford Police Department's Code of Conduct by making the following radio transmission in response to a call: "All set, you can slow everyone down, just a couple of Karens." When Sgt. Giovanni DiCenso attempted to counsel him on the violation, he was unreceptive to the counseling.

Officer Agostino then made comments in front of other officers criticizing Sgt. DiCenso for attempting to counsel him on his radio transmissions.

52. On September 14, 2020, Officer Agostino disobeyed a direct order at an active crime scene. Sgt. DiCenso ordered him to guard a firearm at the crime scene and specifically told him not to touch it because the Crime Scene Division was en route. Officer Agostino, however, picked up the firearm and carried it to Sgt. DiCenso in direct and willful violation of his order. When Sgt. DiCenso counseled him about it afterwards, he became angry and argumentative and defied Sgt. DiCenso's efforts to counsel him.

53. Despite each of these incidents being documented as well as the previous incidents described within this complaint, the Defendants have taken no steps to discipline or investigate Officer Agostino for serious violations of their own Code of Conduct. In other words, the Defendants have gone out of their way to protect him – a very different form of treatment than they have given Sgt. Zweibelson.

## COUNT ONE – RETALIATION IN VIOLATION OF CONN. GEN. STAT. 31-51q AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

54. Paragraphs 1 through 53 of this Complaint are hereby incorporated herein.

55. Conn. Gen. Stat. § 31-51q creates a cause of action for employees who are disciplined for exercising their First Amendment rights or their free speech rights under the Connecticut Constitution.

56. Sgt. Zweibelson exercised both his First Amendment rights and his free speech rights under Article First, § 4 of the Connecticut Constitution by making a complaint against Officer Agostino alleging that he was engaging in harassment and creating a hostile work environment.

57. Officer Agostino is a personal favorite of the Defendants, and, as such, they have taken extensive steps to protect him from discipline and even criminal prosecution.

58. The Defendants retaliated against Sgt. Zweibelson because he made multiple reports of misconduct against a personal favorite of the Defendants by delaying their investigation in Officer Agostino's misconduct, opening an investigation into Sgt. Zweibelson without informing him why he is being investigated, ostracizing him within the Hartford Police Department severely compromising his ability to perform his duties, and manufacturing reasons to deny him a pay increase to which he is entitled.

59. The Defendants' actions constitute unlawful retaliation under Conn. Gen. Stat. § 31-51q.

## COUNT TWO – RETALIATION IN VIOLATION OF 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

60. Paragraphs 1 through 59 of this Complaint are hereby incorporated herein.

61. The Defendants' actions constitute unlawful retaliation under 42 U.S.C. § 1983 for Sgt. Zweibelson engaging in speech protected by the First Amendment.

## COUNT THREE – HOSTILE WORK ENVIRONMENT AGAINST ALL DEFENDANTS (INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES ONLY).

62. Paragraphs 1 through 61 of this Complaint are hereby incorporated herein.

63. The Defendants' favoritism of Officer Agostino has led them to enable his harassment of Sgt. Zweibelson.

64. The Defendants have also directly harassed Officer Zweibelson by opening an investigation into Sgt. Zweibelson without informing him why he is being investigated, ostracizing him within the Hartford Police Department severely compromising his ability

to perform his duties, and manufacturing reasons to deny him a pay increase to which he is entitled.

65. Their actions have created a pervasively hostile work environment and materially changed the conditions of his employment, thus constituting a hostile work environment.

## DAMAGES

66. As to all counts, the Plaintiff seeks:

   A. Compensatory and economic damages in an amount deemed fair, just, and reasonable;

   B. Punitive damages;

   C. Reasonable attorney's fees;

   D. Such other relief as this Court deems fair and equitable.

## CLAIM FOR A JURY TRIAL

The Plaintiff claims trial by jury in this case.

THE PLAINTIFF

By: /s/ NORMAN A. PATTIS /s/
NORMAN A. PATTIS
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
TEL: 203.393.3017
FAX: 203.393.9745
npattis@pattisandsmith.com
ct13120