## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOHNN ZWEIBELSON,      :
    Plaintiff,         :
                    :       No. 20-cv-1812 (VLB)
   v.                 :
                    :
CITY OF HARTFORD et al.    :       January 21, 2022
    Defendants.       :
                    :
                    :
                    :
                    :

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. 19]

This is an action brought by John Zweibelson, a Sergeant with the City of Hartford Police Department ("SGT Zweibelson") against the City of Hartford and the Chief, Assistant Chief, and Deputy Chief of the Hartford Police Department (collectively "the City") alleging that the City retaliated against SGT Zweibelson in violation of his rights under the First Amendment and Connecticut Constitution and created a hostile work environment after he made a workplace harassment complaint.

Now before the Court is the City's motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons articulated below, the Court grants the City's motion.

### Background

For the purpose of deciding the City's motion to dismiss, the Court "draw[s] all reasonable inferences in Plaintiff['s] favor, assume[s] all well-pleaded factual allegations to be true, and determine[s] whether they plausibly give rise to an

1

entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citations omitted). The following facts are drawn from the allegations in the complaint.

SGT Zweibelson is a sergeant with the Hartford Police Department. [Dkt. 1 (Compl.) ¶ 8]. He has been with the department since 2003 and a ranked member since 2017. [*Id.* ¶¶ 8-9]. Since at least 2019, SGT Zweibelson has been a patrol shift supervisor. [*Id.* ¶¶ 9, 12]. Part of this role entails monitoring police radio channels. [*Id.* ¶ 13].

On the evening of October 22, 2019, SGT Zweibelson was working a shift and monitoring the radio channels when he overheard a conversation on the radio between a subordinate, Police Officer Domenick Agostino ("PO Agostino") and police dispatcher, Adele Muraski ("Ms. Muraski"). [*Id.* ¶¶ 13-14]. PO Agostino and Ms. Muraski were talking about SGT Zweibelson, PO Agostino called him a "tool" and a "total absolute toolbox." [*Id.* ¶ 15]. PO Agostino also told Ms. Muraski that SGT Zweibelson failed to respond to the dispatchers' attempt to contact him. [*Id.* ¶ 15]. He then offered to buy Ms. Muraski coffee for a month if she "fleeted" SGT Zweibelson. [*Id.*] "Fleeting" means to broadcast an officer's unresponsiveness across all department radio frequencies, which would embarrass SGT Zweibelson and possibly lead to disciplinary action. [*Id.*]. Ms. Muraski did not "fleet" SGT Zweibelson but she and PO Agostino continued to talk about him and agreed that he "really is the worst." [*Id.* ¶ 17].

SGT Zweibelson immediately reported this conversation to the Hartford Police Dispatch Center and filed an official complaint with his superiors, Lieutenant

Sean Michel ("LT Michel") and Captain Gabriel Laureano ("CPT Laureano"). [*Id.* ¶ ¶ 18-20]. After listening to the dispatch tape, LT Michel and CPT Laureano told SGT Zweibelson that they believed PO Agostino should be disciplined for his actions. [*Id.* ¶ 20]. After his initial complaints were not addressed and he and PO Agostino remained on the same shift, SGT Zweibelson contacted the human resources department to determine the status of the complaint. [*Id.* ¶¶ 22-23]. Human resources informed him that the investigation had been outsourced to a law firm, however the department still kept SGT Zweibelson, PO Agostino, and Ms. Muraski on the same shifts. [*Id.* ¶ 20].

More than six months after the incident occurred, the attorney hired by the City issued a report finding that SGT Zweibelson's complaints of hostile work environment, stressful work environment, harassment, and retaliation on the basis of religion and veteran status were unsubstantiated even though the City "vaguely acknowledged that Code of Conduct violations had occurred." [*Id.* ¶¶ 28-30].

During their shifts together, PO Agostino would defy SGT Zweibelson's orders and refuse to wear personal protective equipment, he would also cat-call whistle at SGT Zweibelson. [*Id.* ¶ 26]. As a result, SGT Zweibelson took steps on his own to separate himself from PO Agostino. [*Id.* ¶ 27].

In July 2020, Assistant Chief Rafael Medina ("Defendant Medina") informed SGT Zweibelson that there was an internal affairs investigation into his hostile work environment complaints and ordered him to not have contact with PO Agostino. [*Id.* ¶ 37]. The only time SGT Zweibelson and PO Agostino were together was during roll call before their shifts. [*Id.* ¶ 38]. Roll call is an exercise that occurs at the

beginning of every shift where the shift supervisor inspects his officers' equipment and discusses potential issues that may arise during the shift. [*Id.* ¶ 42].

Defendant Medina attended roll call on August 5, 2020 where SGT Zwiebelson was acting as supervisor and PO Agostino was in attendance. [*Id.* ¶ 39]. Defendant Medina had to ask PO Agostino to put on his mask and raised PO Agostino's insubordination with the supervisors in attendance, including SGT Zweibelson. [*Id.* ¶¶ 39-40]. During this discussion, Defendant Medina, without providing an explanation, prohibited SGT Zweibelson from attending roll calls with PO Agostino. [*Id.* ¶ 41]. Though SGT Zweibelson and PO Agostino were assigned to different shifts, PO Agostino worked overtime shifts that overlapped with SGT Zweibelson's schedule and in those instances, SGT Zweibelson could not attend roll call. [*Id.* ¶ 45]. As of the filing of the complaint, the internal affairs investigation remains open. [*Id.* ¶ 47].

SGT Zwiebelson completed an online criminal justice program through Eastern Gateway Community College after which he was entitled to receive a 2.5% pay increase. [*Id.* ¶¶ 11, 49]. SGT Zwiebelson alleges that he did not receive this pay increase because Deputy Chief Dustin Rendock ("Defendant Rendock") miscalculated his credits and required him to provide an official transcript as proof of completion rather than the informal transcript that he initially believed was sufficient. [*Id.* ¶ 49].

The complaint alleges that the City created a hostile work environment and retaliated against SGT Zweibelson for filing the complaint by opening an

investigation into SGT Zweibelson, prohibiting him from attending roll call, and denying him a pay increase.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

## DISCUSSION

The Court will first address count two, SGT Zweibelson's First Amendment retaliation claims pursuant to 42 U.S.C. § 1983, and then move on to counts one and three before discussing jurisdiction as to any remaining claims.

I.   **Count Two: Retaliation for Engaging in Protected Speech in Violation of 42 U.S.C. § 1983**

SGT Zweibelson alleges that the City violated his First Amendment rights by retaliating against him for exercising his right to free speech by filing a complaint against PO Agostino and Ms. Muraski. To make out a prima facie claim of free speech retaliation under § 1983, SGT Zweibelson must "bring forth evidence showing that (1) he has engaged in protected First Amendment activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action." *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).

The First Amendment protects public employee speech if the employee "spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). If the speech at issue does not satisfy these requirements, then the First Amendment does not protect the speaker from adverse action. *Id.* The question of whether speech involves a matter of public concern and is made as a citizen rather than an employee is a question of law for the court to decide after examining the content, form, and context of a given statement, as revealed by the whole record. *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011). To constitute speech on a matter of public concern, an employee's expression must be fairly

considered as relating to any matter of political, social, or other concern to the community." *Id.* at 236. Speech that "primarily concerns an issue that is personal in nature and generally related to [the speaker's] own situation, such as his or her assignments, promotion, or salary does not address matters of public concern." *Id.* Additionally, "when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes[.]"

SGT Zweibelson concedes that he had an official responsibility to report PO Agostino for his misconduct. [Dkt. 21 (Opp.) p. 6]. Thus, under *Garcetti*, his complaint against PO Agostino was unprotected speech. 547 U.S. 410, 421 (2006).[1]

However, SGT Zweibelson claims that his complaint against Ms. Muraski was protected speech because she was a dispatcher who worked for a company contracted by the City and reporting her "did not fall within the ordinary scope of his duties." [Dkt. 21 p. 7]. The Court declines to adopt SGT Zweibelson's argument that any speech outside of the ordinary scope of his duties is protected speech. In fact, *Garcetti* cautions against limiting an employee's official duties to those set forth in a job description. 547 U.S. 410, 424-25 (2006).

The Second Circuit has interpreted *Garcetti* to conclude that a workplace grievance filed through formal channels is not protected speech. *See Weintraub v. Bd. Of Educ. Of City Scho. Dist. Of City of New York*, 593 F.3d 196, 201 (2d Cir. 2010). In *Weintraub*, a public school teacher claimed that he was retaliated against

---

[1] In *Garcetti*, the Supreme Court held that a prosecutor's memo advising his supervisors on how best to proceed with a pending case was not protected speech because he created the memo as part of his official responsibilities. *Id.*

after he filed a complaint with his union alleging that his assistant principal failed to discipline a student after the student threw books at Weintraub on multiple occasions. *See Id.* The Second Circuit concluded that, "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description." *Id.* at 203. Thus, "Weintraub's grievance was 'pursuant to' his official duties because it was part-and-parcel of his concerns about his ability to properly execute his duties as a public school teacher[.]" *Id.* (citation omitted).

SGT Zweibelson, as a shift supervisor, had a responsibility to monitor the conduct of those working on his shift. Though he was not directly responsible for Ms. Muraski, her actions as a dispatcher were directly related to his job in that she was responsible for sending him and his subordinates out on calls. SGT Zweibelson alleges that he made a complaint about what he heard on the radio because he "experienced severe fear for his safety as [Ms. Muraski] was responsible for sending him to respond to calls…in other words, SGT Zweibelson no longer trusted [Ms. Muraski] to work with him safely." [Dkt. 1 (Compl.) ¶ 19]. Like in *Weintraub*, SGT Zweibelson's complaint related to his ability to perform his job which the Second Circuit has concluded does not constitute protected speech.

SGT Zweibelson tries to frame his complaint as addressing broader issues related to misconduct and bribery that affect public safety and therefore are matters of public concern. [Dkt. 21 (Opp.) p. 7]. However, he does not provide any support for this contention and the allegations in the complaint do not support this interpretation. A fair reading of the record shows that SGT Zweibelson's grievances

with what he overheard on the radio were purely personal and fall well short of a matter of public concern.

For these reasons, the Court finds that SGT Zweibelson's complaint about PO Agostino and Ms. Muraski is not speech protected by the First Amendment, therefore the Court need not address the second and third elements of a First Amendment retaliation claim and count two must be dismissed.

II.   **Count 1: Retaliation for Engaging in Protected Speech in Violation of Conn. Gen. Stat. § 31-51q**

Section 31-51q of the Connecticut General Statutes provides a cause of action for violations of the right to free speech under the United States and Connecticut Constitutions. It states, in relevant part:

> Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or Section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge…

Conn. Gen. Stat. § 31-51q. To succeed on a claim under this statute, SGT Zweibelson must show that "(1) he was exercising rights protected by the First Amendment to the United States Constitution (or an equivalent provision of the Connecticut Constitution), (2) he was fired on account of his exercise of such rights, and (3) his exercise of his First Amendment rights did not substantially or materially interfere with his bona fide job performance or with his working relationship with his employer." *Austin v. City of Bridgeport*, No. 3:17-CV-01306

(MPS), 2019 WL 4600301, at *16 (D. Conn. Sept. 23, 2019) (citing *Trusz v. UBS Realthy Inv'rs*, 2010 WL 1287148, at *9 (D.Conn. Mar. 30, 2010)).

### a. First Amendment Protected Speech

As discussed in Section I, the Court finds that SGT Zweibelson did not engage in protected speech, therefore he has no cause of action under Conn. Gen. Stat. § 31-51q for violations of the United States Constitution.

### b. Connecticut Constitution Protected Speech

The Court declines to exercise jurisdiction over SGT Zweibelson's claims under the Connecticut Constitution. See Section IV *infra.*

### III.   Count Three: Hostile Work Environment

The Complaint does not state whether SGT Zweibelson is bringing a hostile work environment claim under federal or state law. The City's Motion to Dismiss presumes that the hostile work environment claim is brought under Title VII of the Civil Rights Act, 42 U.S.C. §§ 1981, and 1983. SGT Zweibelson, in his opposition to the motion to dismiss does not object, therefore the Court will treat it as such.

Under Title VII, it is unlawful for an employer to subject individuals to a discriminatorily hostile or abusive work environment. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993); 42 U.S.C. § 2000e-2(a)(1). To prove that a workplace is actionably "hostile" under Title VII, a plaintiff must demonstrate that (1) he "subjectively perceive[d] the environment to be abusive;" (2) the conduct was so "severe or pervasive that it created an "objectively hostile or abusive work environment," meaning "an environment that a reasonable person would find

hostile or abusive;" and (3) the conduct created an environment abusive to employees "because of their race, gender, religion, or national origin." *Harris*, 510 U.S. at 21-22.

SGT Zweibelson's complaint does not allege membership in a protected class except when discussing his unsubstantiated complaint of "hostile work environment, stressful work environment, harassment, and retaliation on the basis of religion and veteran status[.]" [Dkt. 1 (Compl.) ¶ 28].

Critically, SGT Zweibelson does not plead any facts suggesting a causal relationship between the City's actions and his membership in a protected class. Therefore, his hostile work environment claim under Title VII fails.

To the extent that SGT Zweibelson's hostile work environment claim stems from state law, the Court declines to exercise jurisdiction. The Court grants the City's motion to dismiss count three. See Section IV *infra*.

IV.   <u>Jurisdiction Over State Law Claims</u>

Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise jurisdiction over any violations of Conn Gen. Stat.  § 31-51q under the Connecticut Constitution and any hostile work environment claims stemming from state law. 28 U.S.C. § 1367 grants the Court supplemental jurisdiction over all claims related to claims in an action over which the district courts have original jurisdiction. However, the Court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, the Court dismissed all claims over which it had original jurisdiction, arising

out of the constitution and laws of the United States. 28 U.S.C. § 1331. Having declined to exercise supplemental jurisdiction over the state law claims, which are the only claims remaining, the case is dismissed.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the City's motion to dismiss the complaint. As amendment appears futile, the Clerk is directed to close the case.

It is so ORDERED.


_____/s/_____
**Vanessa L. Bryant**
**United States District Judge**

Dated at Hartford, Connecticut, this 21st of January 2022

**12**